```
                 UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION


UNITED STATES OF AMERICA,      ) Tampa, Florida
                               )
                  Plaintiff,   ) No. 8:16-CR-285-T-33MAP
                               )
           vs.                 ) February 9, 2017
                               )
FRANKLIN ALIZANDRO CHOCON      ) 2:30 p.m.
GOMEZ and JOSE YECID CASTRO    )
HURTADO,                       )
                               )
                  Defendants.  ) Courtroom 14B
_____)
```

**TRANSCRIPT OF SENTENCING HEARING**
BEFORE THE HONORABLE VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

*Official Court Reporter:*

*Scott Gamertsfelder, RMR, FCRR*
*801 North Florida Avenue*
*Tampa, Florida 33602*
*Telephone: (813) 301-5898*

*(Proceedings reported by stenotype; Transcript produced by computer-aided transcription.)*

**A P P E A R A N C E S**

**GOVERNMENT COUNSEL:**

       **Lisa Thelwell, Assistant U.S. Attorney**
       United States Attorney's Office
       400 North Tampa Street, Suite 3200
       Tampa, Florida 33602
       (813) 274-6000

**GOMEZ DEFENSE COUNSEL:**

       **Howard C. Anderson, Assistant Public Defender**
       Federal Public Defender's Office
       400 North Tampa Street, Suite 2700
       Tampa, FL 33602
       (813) 228-2715

**HURTADO DEFENSE COUNSEL:**

       **Che Lopardo, Esq.**
       Lopardo Law Group, PL
       3030 North Rocky Point Drive W.
       Tampa, Florida 33607
       (813) 758-9347

                     **ALSO PRESENT:**

                     Tracy Shroyer, Probation Officer

                     Kasey Fuqua, Probation Officer

                     Gabriela Loncar, Interpreter

                         - - -

1              **P R O C E E D I N G S**

2    February 9, 2017                                    2:38 p.m.

3                              - - -

4              COURT SECURITY OFFICER:  All rise.

5              The United States District Court in and for the

6    Middle District of Florida is now in session.  The Honorable

7    Virginia M. Hernandez Covington presiding.

8              Please be seated.

9              THE COURT:  Good afternoon, everyone.

10             We are here for the sentencings in *United States*

11   *versus Franklin Alizandro Chocon Gomez and Jose Yecid Castro*

12   *Hurtado*.  It's Case No. 8:16-cr-285-T-33MAP.

13             First thing we will do is swear in the Spanish

14   interpreter Gabriela Loncar.

15             THE COURTROOM DEPUTY:  Please raise your right

16   hand.

17             Do you solemnly swear or affirm under penalty of

18   perjury that you will truthfully and to the best of your

19   ability translate from English to Spanish and from Spanish to

20   English all questions and responses propounded by this Court?

21             THE INTERPRETER:  I do.  Gabriela Loncar.

22             THE COURT:  Thank you, Miss Loncar.

23             I'll begin by having counsel state their

24   appearance.  Who do we have for the government?

25             MS. THELWELL:  Good afternoon, Your Honor.  Lisa

1    Thelwell on behalf of the United States, standing in for

2    Daniel Baeza.

3             THE COURT:  Thank you.

4             Mr. Anderson.

5             MR. ANDERSON:  Good afternoon.  Howard Anderson on

6    behalf of Franklin Alizandro Chocon Gomez, to my right, with

7    the assistance of the interpreter this afternoon.

8             THE COURT:  Mr. Lopardo.

9             MR. LOPARDO:  Good afternoon.  I'm representing

10   Jose Yecid Castro Hurtado.

11            THE COURT:  I'll do both defendants at the same

12   time.

13            Franklin Alizandro Chocon Gomez and Jose Yecid

14   Castro Hurtado, on November 2nd, 2016, you entered a plea of

15   guilty to Count One of the Indictment, charging you with

16   conspiracy to possess with intent to distribute 5 kilograms

17   or more of cocaine while on board a vessel subject to the

18   jurisdiction of the United States, in violation of Title 46,

19   United States Code, Sections 70503(a) and 70506(a) and (b),

20   and Title 21, United States Code, Section 960(b)(1)(B)(ii).

21            The Court has previously accepted your guilty plea

22   and has adjudged you guilty of that offense.  We have now

23   reached the stage in the proceedings where it is my duty to

24   address several questions to you and your attorney and the

25   counsel for the government.

1              I'll begin with Miss Thelwell.  Miss Thelwell,

2    have you had the opportunity to read both presentence

3    reports?

4              MS. THELWELL:  Yes, Your Honor.

5              THE COURT:  Do you have any objections as to the

6    factual accuracy of both presentence reports?

7              MS. THELWELL:  No, Your Honor.

8              I did see that Mr. Baeza did send an objection as

9    to paragraph 19 with Mr. Chocon Gomez.  I'm not sure if there

10   was another Presentence Investigation Report that was updated

11   and submitted to the Court.  The one that I have is before

12   that.

13             THE COURT:  Is this the one with respect to him

14   being the captain or not?

15             MS. THELWELL:  Yes, yes.

16             THE COURT:  I'll tell you what.  I'm going to take

17   that up with Mr. Anderson.  I'm not certain that we have

18   enough information to determine that he really was the

19   captain.  This is a 20-year-old and three persons on this

20   little vessel.

21             MS. THELWELL:  The United States agrees.

22   Mr. Baeza did contact probation, indicating we would not be

23   seeking that enhancement.

24             THE COURT:  Okay.  So let's see.  Let me find

25   Mr. Chocon.  Right now he's at 35/I, which is 168 months.

1    The enhancement is of two levels.

2            Isn't that right?

3            THE PROBATION OFFICER:  Yes, Your Honor.

4            THE COURT:  Two levels for being the captain.

5            MS. THELWELL:  It's actually in Paragraph 18.

6            THE COURT:  So if I reduce that to a 33/Level I,

7    it would be 135 to 168 months.  The same thing as the

8    co-defendant.

9            THE PROBATION OFFICER:  Yes, Your Honor.

10           THE COURT:  All right.  Do you object to that,

11   that adjustment?

12           MS. THELWELL:  No, Your Honor.

13           THE COURT:  I will go ahead and make that

14   adjustment for Mr. Chocon.

15           Any other objections as to the factual accuracy or

16   any objections to the probation officer's application of the

17   guidelines for either gentlemen?

18           MS. THELWELL:  No, Your Honor.

19           THE COURT:  Thank you.

20           I'll now turn to Mr. Anderson.  Mr. Anderson, have

21   you had the opportunity to read and discuss the presentence

22   report with Mr. Chocon?

23           MR. ANDERSON:  I have, Your Honor.

24           THE COURT:  Do you have any objections as to the

25   factual accuracy of the report?  I know you object to the

1  captain status, so we have noted that, and I've made that --

2  I've made that adjustment.  So I sustain that objection.

3       Any other objections to the factual accuracy of

4  the report or the probation officer's application of the

5  guidelines?

6       MR. ANDERSON:  No objections, Your Honor.

7       THE COURT:  Okay.  And with respect to -- let me

8  turn to Mr. Lopardo's client, Mr. Castro.  So, Mr. Lopardo,

9  have you had the opportunity to read and discuss with

10  Mr. Castro the presentence report?

11       MR. LOPARDO:  Yes, Your Honor.

12       THE COURT:  Do you have any objections as to the

13  factual accuracy of the report?

14       MR. LOPARDO:  No, Your Honor.

15       THE COURT:  Do you wish to make any objections to

16  the probation officer's application of the guidelines?

17       MR. LOPARDO:  No, Your Honor.

18       THE COURT:  All right.  So as for both gentlemen,

19  let's see, Total Offense Level 33, Criminal History

20  Category I, 135 to 168 months' imprisonment, five years

21  supervised release, restitution is not applicable, 35,000 to

22  a $10 million fine, and a $100 special assessment.

23       So I am adopting the statements as my findings of

24  fact, and that's what I determine that the advisory

25  guidelines are.

1          So moving forward, Miss Thelwell, do you know of

2   any reason why this Court should not now proceed with

3   imposition of sentence?

4          MS. THELWELL:  No, Your Honor.

5          THE COURT:  All right.  So I'm going to ask you

6   for your recommendation to the Court in just a second.  I

7   pulled the person that I previously sentenced in this case,

8   who was Jerry Gongora.  Mr. Gongora did have a 5K I think.

9   He was the first one to come in, so you do get a reduction in

10   sentence for being the first one in the door.

11          He was originally at 33/1, minus the 2, that

12   brought him to 31/I.  I sentenced him to 108 months'

13   imprisonment.

14          Is there a statutory minimum here?

15          MS. THELWELL:  Yes, Your Honor.

16          THE COURT:  Is it ten years?

17          MS. THELWELL:  I believe so.  I'm just

18   double-checking.

19          THE COURT:  I think it's ten years, is what it is.

20          THE PROBATION OFFICER:  Yes, Your Honor.

21          THE COURT:  So there is a statutory minimum of ten

22   years.  Mr. Gongora was able to get around that because of

23   his 5K.  In any event, that was 108 months that I sentenced

24   the co-defendant to because of his early cooperation.  So

25   that's where we are at.

1          So I now ask you, do you wish to make a statement

2   with respect to what an appropriate sentence for these two

3   gentlemen would be?

4          MS. THELWELL:  Your Honor, just briefly.

5          Given the nature of the offenses, I do believe

6   that an appropriate sentence would fall within their

7   guideline range of anywhere between 135 months to 168 months.

8          THE COURT:  Okay.  Thank you very much.  I

9   appreciate it.

10         I'm now going to turn, first, to Mr. Anderson.

11  And, Mr. Anderson, do you know of any reason why this Court

12  should not now proceed with imposition of sentence?

13         MR. ANDERSON:  No, Your Honor.

14         THE COURT:  This is your opportunity to make a

15  statement, present any information in mitigation of the

16  sentence.

17         And, Mr. Chocon, you have the right to address the

18  Court directly.  You don't have to, but I want to make

19  certain that you understand that you have that right.

20         Do you understand that, Mr. Chocon?

21         DEFENDANT CHOCON GOMEZ:  May I speak?

22         THE COURT:  Yes, you may speak; but right now,

23  it's just, you understand that you can speak to the Court?

24  And I'll come back to you in a minute to see if you would

25  like to say something.  All right?

1          DEFENDANT CHOCON GOMEZ:  All right.

2          THE COURT:  Okay.  I'll come back to you in a

3   minute.

4          Mr. Anderson.

5          MR. ANDERSON:  Judge, I would ask this Honorable

6   Court to sentence Mr. Chocon Gomez to the very low end of the

7   guidelines, 135.

8          Miss Thelwell may not be aware, there was a

9   low-end provision in the plea agreement, and I don't believe

10   Mr. Baeza was in opposition to Mr. Chocon Gomez getting the

11   low end.

12          I would ask, basically, at this time, based upon

13   the nature and circumstances, his lack of criminal history,

14   and the reason why this offense was committed and all the

15   other 3553(a) factors, sentencing him to the low end of 135.

16          I would personally like to thank Mr. Baeza.  He's

17   not here, so if Miss Thelwell will do that for me, because

18   there was an issue with whether Mr. Chocon Gomez was some

19   kind of enhanced role.

20          We did a series of debriefings with Special Agent

21   John Cercet (*phon*.) with the Drug Enforcement Agency.  After

22   those debriefings, I believe Agent Cercet (*phon*.) went back

23   to Mr. Baeza and said he didn't believe there was any

24   enhanced role, and Mr. Baeza went by those.

25          I know probation wasn't aware of that, so

1  basically the discovery they had looked at, there was some

2  enhanced role.  But I, again, would like to applaud Mr. Baeza

3  for that, for basically, after review, believing Mr. Chocon

4  Gomez had no further enhanced role in this.

5         And based upon that, Judge, I would ask this

6  Honorable Court to sentence him to the low end of 135.

7         THE COURT:  Okay.  Thank you.

8         Anything you would like to say, Mr. Chocon?

9         DEFENDANT CHOCON GOMEZ:  Yes.

10        THE COURT:  Go ahead.

11        DEFENDANT CHOCON GOMEZ:  Should I stand?

12        THE COURT:  Either way.  You can sit.  It's okay.

13 Whichever you feel more comfortable.  Sit, stand.  Either way

14 is okay.

15        DEFENDANT CHOCON GOMEZ:  First of all, I apologize

16 to God, to the United States, because I made a mistake,

17 because I have to pay for the mistake that I made.  But I

18 hope to God and to the judge that it's not too much.

19        Thank you.

20        THE COURT:  All right.  Thank you, Mr. Chocon.

21        All right.  I'll sentence both gentlemen at the

22 same time.

23        I'll now turn to Mr. Lopardo.  Mr. Lopardo, do you

24 know of any reason why this Court should not now proceed with

25 imposition of sentence?

1              MR. LOPARDO:  No, Your Honor.

2              THE COURT:  This is your opportunity to make a

3     statement, present any information in mitigation of the

4     sentence.

5              And, Mr. Castro, you have the right to address the

6     Court directly.  You don't have to, but I want to make

7     certain you understand that you can speak to me directly.

8              Do you understand that, Mr. Castro?

9              DEFENDANT CASTRO HURTADO:  Yes, I understand.

10             THE COURT:  Thank you.  I'll come back to you in a

11    moment, Mr. Castro.

12             Go ahead, Mr. Lopardo.

13             MR. LOPARDO:  I would ask the Court in this case

14    to consider two things about my client.  If he is sentenced

15    to the full term recommended, he'll be in his mid-60s when

16    he's released, which I understand he put himself in this

17    position; but I would also ask the Court to consider the fact

18    that he's illiterate, really never even went to school, so

19    his difficulty in re-assimilating would be even more

20    difficult.

21             I would ask the Court to consider departure to the

22    120 months, which is the minimum mandatory.

23             THE COURT:  Well, the two of them are pretty

24    similarly situated.  The co-defendant is 20 years old.  You

25    can kind of say the polar opposite of what we said for your

1   client applies to him, but kind of has the same impact.  You

2   have somebody at 20 doing something and you have somebody in

3   their late 50s doing something.

4          MR. LOPARDO:  That's not lost on me, Your Honor.

5          THE COURT:  I'll tell you, the co-defendant, the

6   cooperator -- he wasn't a cooperator.  The person who agreed

7   to plead guilty first got 108 months, and he deserves

8   something for coming in first because, you know, there's got

9   to be a benefit.  There's got to be a reward for being the

10  first in.

11         All of these cases are -- the defendants are all

12  pretty much similarly situated.  They are all heart-wrenching

13  stories of difficulties, some more heart-wrenching than

14  others, but all basically the same.  They are very respectful

15  when they talk to me and very apologetic and good people.

16         They did something stupid.  They needed the money.

17  And, really, when your income is, I don't know, maybe a

18  thousand dollars a year, for somebody to put $10,000 in front

19  of you, or whatever they offered, it's really hard to resist

20  that temptation when you are so poverty stricken.  But I'm

21  not certain about a downward variance here.

22         What do you have to say, if anything, Mr. Castro?

23         DEFENDANT CASTRO HURTADO:  I would like to thank

24  Your Honor very much, and the judge to forgive me, that I had

25  never done this before, and I'm not going to do it again.

1        Thank you.

2        THE COURT:  All right.  Anything else before I

3   pronounce sentence?

4        MS. THELWELL:  Your Honor, I just wanted to

5   clarify.  I thank Mr. Anderson for pointing it out.  I forgot

6   that Mr. Baeza did mention that both defendants have low-end

7   provisions in their plea agreements.

8        THE COURT:  Okay.  I appreciate that.  I mean, I

9   really -- I would sentence them to the low end of the

10  guidelines.  I'm just debating a moment here whether to vary

11  downward slightly in light of one's youth and the other one's

12  age.  It would be a slight downward variance.  I'll just

13  think about that for a moment.

14        The Court has asked the defendant why judgment

15  should not now be pronounced, and after hearing the

16  defendant's response, the Court has found no cause to the

17  contrary.  The parties have made statements on their behalf

18  or have waived the opportunity to do so.  The Court has

19  reviewed the presentence report and the advisory guidelines.

20        Pursuant to Title 18, United States Code, Sections

21  3551 and 3553, it is the judgment of the Court that the

22  Defendants Jose Yecid Castro Hurtado and Franklin Alizandro

23  Chocon Gomez are each hereby sentenced or committed to the

24  custody of the Bureau of Prisons, to be imprisoned for a term

25  of 126 months.

1          Upon release from imprisonment, you shall serve a

2    five-year term of supervised release.  While on supervised

3    release, you shall comply with the standard conditions

4    adopted by the Court in the Middle District of Florida.

5          In addition, you shall comply with the following

6    special conditions:

7          If the defendant is deported, he shall not

8    re-enter the United States without the express permission of

9    the appropriate governmental authority.

10          The defendant having been convicted of a

11    qualifying felony shall cooperate in the collection of DNA as

12    directed by the probation officer.  The mandatory drug

13    testing requirements of the Violent Crime Control Act are

14    waived; however, the Court orders the defendant to submit to

15    random drug testing, not to exceed 104 tests per year.

16          Based on the financial status of the defendant,

17    the Court waives imposition of a fine.  It is further ordered

18    that the defendant shall pay to the United States a special

19    assessment of $100, which shall be due immediately.

20          After considering the Advisory Sentencing

21    Guidelines and all of the factors identified in Title 18,

22    United States Code, Sections 3553(a)(1) through (7), the

23    Court finds that the sentence imposed is sufficient, but not

24    greater than necessary to comply with the statutory purposes

25    of sentencing.

1          The Court has accepted the plea agreement because

2    it is satisfied that the agreement adequately reflects the

3    seriousness of the actual offense behavior and that accepting

4    the plea agreement will not undermine the statutory purposes

5    of sentencing.

6          Under the plea agreement, the defendant has

7    entered a guilty plea to Count One in return for the

8    dismissal of Count Two.  In accordance with the plea

9    agreement, it is ordered that Count Two of the Indictment be

10   dismissed.

11         I think that's for both defendants; is that right?

12   I think so.  They both pled with a plea agreement, right?

13         MS. THELWELL:  Yes, Your Honor.

14         THE COURT:  Let me double-check here.  Right.

15         So the guidelines are advisory today, Mr. Chocon,

16   and, Mr. Castro, and I varied slightly downward.  I was

17   looking at a guideline range of 135 to 168 months.  I varied

18   downward to 126.

19         I did that so that it would be consistent with the

20   sentence that I gave Mr. Gongora.  I sentenced him to 108

21   months, but he deserves a reward for being the first one to

22   come in and say he was guilty.  To be consistent with that

23   sentencing, I felt that 126 months for each of you was

24   appropriate.

25         First of all, Mr. Chocon, you are 20 years old.

1    Is that right?  Or you were 20 when this crime occurred.

2              DEFENDANT CHOCON GOMEZ:  Yes.

3              THE COURT:  A young fellow.

4              DEFENDANT CHOCON GOMEZ:  Nineteen.

5              THE COURT:  On the opposite end, Mr. Castro, even

6    though you are younger than I am, today, someone would say

7    that someone in their late 50s is reaching a point in their

8    life where, if they are going to have to spend ten years in

9    prison, it becomes more significant in terms of the amount of

10   years that you have left, so I factored that in.

11             I factored in the fact that you haven't had a

12   chance to have the educational opportunities that other

13   people have had, and I think you are both pretty similarly

14   situated.  For different reasons, it causes you to be

15   similarly situated.  I've tried to show as much compassion as

16   I can while still recognizing that these are very significant

17   crimes.

18             This isn't a little bit of marijuana that one

19   person sold to somebody else.  I forget how many pounds it

20   was.  I've got to go back and double-check.

21             Remind me.  What was the poundage of this?

22             MS. THELWELL:  It was 628 kilograms.

23             THE COURT:  It was 628, so about 1400 pounds, give

24   or take -- 1300 pounds.  It's a lot of cocaine.

25             You've been in prison now -- how many months have

1   you been in prison here in the United States?

2           DEFENDANT CHOCON GOMEZ:  We were brought -- we

3   were caught on July 13th.  June, July.

4           THE COURT:  Okay.  So six, seven months.  About

5   seven months or so.

6           DEFENDANT CHOCON GOMEZ:  Seven months.

7           THE COURT:  Seven months in state prison.  And I

8   bet you have seen a lot of people there who are in jail

9   because they are drug users or have started selling drugs to

10  support their drug habit.

11          Am I right on that?

12          DEFENDANT CHOCON GOMEZ:  Yes.

13          THE COURT:  Okay.  And that's why these penalties

14  are so stiff.  I mean, ten years in prison is a long time,

15  but that's why, because of the harm and the damage that it

16  causes people here in the United States.  It's significant,

17  but I've tried to show as much mercy as I possibly can under

18  the circumstances.

19          The Court having pronounced sentence, does counsel

20  for the defendant or government have any objections to the

21  sentence or to the manner in which the Court pronounced

22  sentence other than those previously stated for the record?

23          From the government?

24          MS. THELWELL:  No, Your Honor.

25          THE COURT:  Thank you.

1              Mr. Anderson, for Mr. Chocon?

2              MR. ANDERSON:  No objections, Your Honor.

3              THE COURT:  Mr. Lopardo, for Mr. Castro?

4              MR. LOPARDO:  No objection.

5              THE COURT:  Okay.  The defendants are remanded to

6  the custody of the United States Marshal to await designation

7  by the Bureau of Prisons.  And I'm going to get to

8  recommendations in just a minute.  Let me finish the

9  colloquy.

10              To the extent permitted by your plea agreement,

11  you have the right of appeal from the judgment and sentence

12  within 14 days from this date.  Failure to appeal within the

13  14-day period shall be a waiver of your right to appeal.  The

14  government may file an appeal from this sentence.

15              You are also advised that you are entitled to the

16  assistance of counsel in taking an appeal; and if you are

17  unable to afford a lawyer, one will be provided for you.  If

18  you are unable to afford the filing fee, the Clerk of the

19  Court will be directed to accept the Notice of Appeal without

20  such fee.

21              So, first of all, I'm going to go to Mr. Chocon.

22  Mr. Anderson, where would your client like to be housed?

23              MR. ANDERSON:  Your Honor, we request the facility

24  at Fort Dix, New Jersey.

25              THE COURT:  Good.  That way maybe he can do the

1    UNICOR things.

2              MR. ANDERSON:  UNICOR.  And I understand they are

3    offering educational programs for them.  In particular,

4    getting a Graduate Equivalency Degree, and also possibly

5    proficiency in English so then when he wants to return to his

6    country, home country, he'll be bilingual and be able to find

7    employment with the interpreting field, which would be

8    somewhat lucrative for him.

9              THE COURT:  I recommend that he be housed in

10   Fort Dix, New Jersey, so that he can take advantage of the

11   opportunities that that facility provides and so that he can

12   get his GED and so that he can participate in the UNICOR

13   program and so that he can take English as a second language.

14             Any other skills that you are interested in?

15   Maybe vocational training?  What do you think you would like?

16   Mechanics?  Do you like electrical work?  What kind of

17   vocational things do you think you would like?

18             DEFENDANT CHOCON GOMEZ:  I like mechanics.  I

19   wanted to study that, but I didn't have the opportunity.

20             THE COURT:  Well, maybe at least now you will get

21   something positive out of it.  I recommend that you be

22   allowed to take classes in mechanics so you can have that

23   type of vocational training and that you be evaluated for any

24   other vocational programs that the Bureau of Prisons deems

25   appropriate.

 1            We will put on the J and C that he was paroled

 2  into the United States so he can take these programs, as

 3  opposed to having come illegally, and a lot of those

 4  individuals are precluded from those programs.

 5            Anything else you can think of for your client

 6  that might help him?

 7            MR. ANDERSON:  I believe that should cover it,

 8  Your Honor.  Thank you.

 9            THE COURT:  Mr. Lopardo, how about your client?

10  What would he like?  First of all, he needs to learn how to

11  read and write in Spanish.  That's No. 1.  So he needs to

12  take classes to learn how to read and write in Spanish.  I

13  wouldn't worry too much about English right now.  He can

14  certainly try to take classes in English as a second

15  language, but I think much more important is that he become

16  literate in his first language.

17            MR. LOPARDO:  I would agree with that, Your Honor.

18  He would also like to participate in vocational training and

19  then work as much as possible.

20            THE COURT:  What kind of vocational training do

21  you think he would like?  Or just to be evaluated for

22  vocational training?

23            MR. LOPARDO:  That's probably the best idea.

24            THE COURT:  That he be evaluated for vocational

25  training and that he be allowed to participate in the UNICOR

1  program.

2          Would he like to be housed in Fort Dix,

3  New Jersey, too, or someplace else?

4          MR. LOPARDO:  Last time we spoke we discussed

5  Coleman.

6          THE COURT:  I'll just tell you -- and, I mean,

7  this is -- you don't know what's going to happen, and so it's

8  basically a guessing game, Mr. Lopardo, but you try to make

9  the most educated guess you can.

10         I think the people at the federal defender have

11 determined that Fort Dix is the best bet for people who have

12 been paroled into the United States to get these

13 opportunities.  That's all I'll say, as an observer.  I don't

14 know what the right answer is.  I mean, you do one thing and

15 sometimes you end up being wrong.  I'm happy to recommend

16 Coleman, but I think his chances are better at Fort Dix.  But

17 whatever he wants to do is perfectly fine by me.

18         DEFENDANT CASTRO HURTADO:  Yeah, I'll go to

19 Fort Dix.

20         THE COURT:  I mean, the federal defender has

21 studied this, and that's been their recommendation to all

22 individuals in your situation.  I think Fort Dix is the

23 better choice, so I'm going to recommend Fort Dix.

24 Hopefully, at least, you can participate in UNICORE.  I heard

25 in Coleman you couldn't even do UNICOR.  So that's better.

1              MR. LOPARDO:  Thank you, Your Honor.

2              THE COURT:  All right.  I hope I covered

3    everything for your client.  So, first, he needs to learn how

4    to read and write in Spanish.  Once that's been accomplished,

5    classes in English as a second language, vocational training,

6    be evaluated by the Bureau of Prisons as to which vocational

7    training programs are best for him, participation in the

8    UNICORE program, housed in Fort Dix.

9              I think I covered everything there.  Anything

10   else?

11             MR. LOPARDO:  No, Your Honor.

12             MS. THELWELL:  Your Honor, I'm not sure if the

13   Court addressed the Preliminary Order of Forfeiture that was

14   filed.

15             THE COURT:  Yes, we did have a Preliminary Order

16   of Forfeiture.  He had a number of assets; the Garmin and the

17   satellite.  So there have been no objections to it, so that's

18   being turned into the Final Order of Forfeiture today.

19             MS. THELWELL:  For both cases.

20             THE COURT:  For both cases.

21             Can probation think of anything for these

22   gentlemen that I may have missed?

23             PROBATION OFFICER SHROYER:  Your Honor, I believe

24   someone with the Federal Defender's Office just advised me --

25   and Mr. Anderson may be able to tell me.  I hear there is

1 another facility in Pennsylvania that is allowing them to

2 work the UNICOR.

3        Are you aware?

4        MR. ANDERSON:  I've heard of it, too.  It's in

5 Western Pennsylvania, but the facility is smaller than

6 Fort Dix.  Fort Dix, to my understanding, is very large, so

7 we have been asking for Fort Dix.

8        If there is any run over, since it's kind of close

9 to Fort Dix, then they may -- the Bureau of Prisons, if there

10 is not enough space, too crowded, they will maybe send them

11 to that facility in Western Pennsylvania.

12        THE COURT:  All right.

13        THE PROBATION OFFICER:  I just thought you might

14 want to know, just as another option.

15        THE COURT:  Right.  I always try to study this to

16 try to send them to where it's best for them.

17        I'll just say this about the plea agreement in

18 case I didn't.  To the extent permitted by your plea

19 agreement, you have the right of appeal from the judgment and

20 sentence within 14 days from this date.  Failure to appeal

21 within the 14-day period shall be a waiver of your right to

22 appeal.  The government may file an appeal from this

23 sentence.

24        You are also advised that you are entitled to the

25 assistance of counsel in taking an appeal; and if you are

1    unable to afford a lawyer, one will be provided for you.  If

2    you are unable to afford the filing fee, the Clerk of the

3    Court will be directed to accept the Notice of Appeal without

4    such fee.

5           Anything else before we adjourn, Miss Thelwell?

6           MS. THELWELL:  No, Your Honor.

7           THE COURT:  Thank you.

8           Mr. Anderson?

9           MR. ANDERSON:  Nothing else, Your Honor.

10          THE COURT:  Thank you, Mr. Anderson.

11          Mr. Lopardo?

12          MR. LOPARDO:  No, Your Honor.

13          THE COURT:  Thank you.

14          Thank you, from probation, Miss Shroyer, and, Miss

15   Fuqua.

16          We are in recess.

17          *(Proceedings concluded at 3:09 p.m.)*

18                         -  -  -

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT   )
                               )
MIDDLE DISTRICT OF FLORIDA     )


## REPORTER CERTIFICATE


I, Scott N. Gamertsfelder, Official Court Reporter for the United States District Court, Middle District of Florida, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript from the stenographic notes taken by the undersigned in the above-entitled matter (Case No. 8:16-CR-285-T-33MAP) and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


/s/ *Scott N. Gamertsfelder*, RMR, FCRR

*Official Court Reporter*

Date: July 12, 2017